FILASTO et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 19, 1914.)

No. 103.

WITNESSES (§ 405*)—CROSS-EXAMINATION—IMPEACHMENT—IMMATERIAL MATTER.

Where, in a prosecution for violating the White Slave Traffic Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), the woman admitted that she had been a prostitute, but on cross-examination denied that she had been so at B. while living there with another than her husband, her conduct at B. was an immaterial matter, and defendants were not entitled to contradict her by proving that during her residence there she had been a prostitute, and that her paramour had had a difficulty with her husband and had cut him with a razor.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 879–884; Dec. Dig. § 405.*]

In Error to the District Court of the United States for the Southern District of New York.

Frank Filasto and Joseph Ribuffo were convicted of violating the White Slave Traffic Act, and they bring error. Affirmed.

The following is the opinion of Hand, District Judge, denying defendant's motion for a new trial, referred to in the opinion:

The motion for a new trial in this case is made upon the exceptions of the defendants to the ruling out of certain testimony upon the trial. The prosecution was for enticing one Candida Cavallucci, alias Annie Græco, to go from New York to Paterson for the purpose of prostitution some time during the second week of January, 1912. The government rested its case upon the testimony of Annie, and of a prostitute named Maria Maura, who both swore that on the 1st of January, 1912, the defendant Filasto had urged upon Annie Græco to go and live in a house of his in Paterson and engage in prostitution, and that on the same evening the other defendant had repeated the request. About 10 days afterwards Annie did go to Paterson for that purpose, and lived there for nearly a year. At the time in question Annie Græco lived in illicit relations with Tony Maura, the brother of Maria Maura. Annie Græco had been married some three years previously, but she swore that her husband had beaten her, and she had complained against him, and then he ran away to Italy. Annie Græco conceded that she had been a prostitute from the time she went to Paterson until about some time toward the end of December, 1912, but denied that she had ever engaged in the practice before, especially in Bridgeport, about three years before, while living with Tony Maura. She conceded that she had lived in Bridgeport with Tony for a month while they ran a restaurant together. Upon Mr. Barra's opening he stated that he would prove to the jury that Annie Græco's husband had gone to Italy because he had been threatened and assaulted with a razor by Tony Maura. I then stated that this was a collateral matter to the main issue, and that he

was bound by the cross-examination of the woman. Counsel thereupon stated that he wished to prove that when Annie Græco went to Bridgeport, about two or three years ago, she had lived there as a prostitute, which I also declined to allow him to prove. After the opening the defendant put in some testimony, and then the record shows that the following events took place, which are relied upon for a reversal:

"Mr. Barra: I call for the witness Musulla.

"The Court: That is the husband?

"Mr. Barra: Yes. I wish to prove he did not beat her and run away.

"The Court: It is not material here.

"Mr. Barra: Exception.

"Mr. Barra: May I prove that Maura assaulted this man with a razor?

"The Court: No.

"Nannine De Marco, a witness called on behalf of the defendant, being first duly sworn, testified as follows (through an interpreter):

"Mr. Barra: This witness is called for the purpose of proving that the witness, Annie Græco, was a prostitute in the city of Bridgeport, Conn.

"The Court: No.

"Mr. Barra: The court rules out the testimony, and the defendants duly except."

The exception to my direction on the opening and to the exclusion of this testimony is what the defendant complains of. It was undoubtedly a part of the defendants' defense that it was Tony who had induced the woman to go to Paterson to ply her trade. Undoubtedly she had practiced prostitution in a house of which the defendant Filasto was the owner, and from which the defendant Ribuffo collected rent, and it was amply proved, although it was denied, that both defendants knew what she was doing in the house. Not only that house, but three or more other houses, of the defendants were regularly used by prostitutes. It was also proved that about the 1st of February Annie Græco and Tony and his sister lived together while she was plying her trade, though, as I understand it, they lived in a different house. It would have been relevant proof in the case to show that two or three years before Tony had put this woman into a house in Bridgeport, and lived from her earnings as a prostitute. This would have lent probability to the story that it was he and not the defendants who in January induced her to go to Paterson, which was the issue of the case. Possibly it might have been relevant also to prove that Tony had seduced her from her husband and assaulted him, so as to show the origin of Tony's domination over her. If it had been urged upon the trial that Tony drove off the husband by violence, and so acquired domination over the witness, and that he had put her into a brothel in Bridgeport while he lived with her, I think I should have allowed the proof. However, nothing of the sort was suggested at the time. What the defendants offered to show was, first, that the woman had been a prostitute in Bridgeport, which she had denied upon her cross-examination. As to that I held, correctly as I think, that it only contradicted her on a collateral matter. It is true that one may impeach a witness by showing she is a prostitute, but she had already conceded that she was a prostitute, and it clearly added nothing to that impeachment to show that, not only was she a prostitute for the year preceding the trial, but that she had already been so three years before that. As to the testimony of the husband that Tony had assaulted him with a razor, it was only offered to contradict the witness' story. It was not suggested that Tony had taken the woman from him by violence. The defendants did not therefore offer any proof, as they now suggest that Tony before January, 1912, had taken charge of this woman, and had induced or persuaded or coerced her in any way to live in a brothel, and had lived on her earnings. The proffer of proof went no further than to show that during the time that Tony had lived with her she had been a prostitute in Bridgeport, and that he had had a fight with her husband and had cut him with a razor. The testimony therefore seems to me to have been irrelevant, and I see no reason for granting another trial because of the exceptions.

The motion is denied.

Caesar B. F. Barra and Henry W. Unger, both of New York City (C. B. F. Barra, of New York City, of counsel), for plaintiffs in error.

H. Snowden Marshall, U. S. Atty., of New York City (John E. Walker, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

PER CURIAM. The record is a short one, involving only questions of fact on which the evidence was conflicting; the witnesses flatly contradicting each other. Their credibility of course was for the jury to pass upon.

The jury were instructed fully, carefully, and fairly—no objection or exception was taken to anything in the charge, nor was there any request submitted for further instructions; both sides evidently were satisfied that the charge was sufficient and unobjectionable. If the jury believed the testimony of the government's witnesses (as their verdict shows they did), the offense was proved. There is nothing in the exception to the refusal to direct acquittal.

The technical points as to admission and exclusion of testimony are sufficiently disposed of in the opinion filed by the trial judge, on denying motion for a new trial.

The judgment is affirmed.